UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
LYNK MEDIA, LLC,                                                       :
:
                        Plaintiff,                          :
:
        -v-                                                            :    24 Civ. 583 (JPC)
:
INDEPENDENT DIGITAL NEWS AND MEDIA, LLC,   :    OPINION AND ORDER
:
                        Defendant.                        :
:
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendant Independent Digital News and Media, LLC, has moved this Court to reconsider its September 29, 2025 Opinion and Order which granted Plaintiff Lynk Media, LLC's motion for summary judgment in part and denied Defendant's cross-motion for summary judgment in full. *See Lynk Media, LLC v. Indep. Dig. News & Media, LLC*, No. 24 Civ. 583 (JPC), 2025 WL 2771625 (S.D.N.Y. Sept. 29, 2025). For the reasons that follow, Defendant's reconsideration motion is denied.

## I. Background

The Court assumes familiarity with this case's background. *See id.* at *1-8 (describing in detail the underlying facts and procedural history). For present purposes, the following background suffices: Plaintiff has alleged that Defendant willfully infringed its copyrights in five videos (the "Videos"). *See generally* Dkt. 17 (Amended Complaint). Following the completion of discovery, the parties cross-moved for summary judgment. *See* Dkts. 38-42 (Plaintiff's motion and supporting papers), 43-48 (Defendant's motion and supporting papers). Plaintiff claimed that there was no genuine dispute of material fact as to Defendant's copyright infringement, Dkt. 39 at 3-8, that such infringement was undisputedly willful, *id.* at 27-30, and that Defendant's defenses

of sublicense and fair use failed as matters of law, *id.* at 6-27. Defendant asserted that its defenses succeeded as matters of law, Dkt. 47 ("Deft. SJ Brief") at 13-37, and that there remained at least a genuine issue of material fact as to its willfulness, *id.* at 38-42.

The Court held that Defendant indisputably infringed Plaintiff's copyrights and that its sublicense and fair-use defenses failed as legal matters. *Lynk Media*, 2025 WL 2771625, at *1, *9-22. But the Court found a genuine issue of material fact on willfulness. *Id.* at *1, *22. So the Court granted Plaintiff's summary judgment motion in part and denied it in part; Defendant's cross-motion was denied in full. *Id.* at *1, *23.

Relevant to Defendant's reconsideration motion is the Court's treatment of its sublicense defense. According to Defendant, it had an express sublicense to embed within its articles tweets containing the Videos, a sublicense which was drawn from Twitter's Terms of Service and Developer Agreement and Policy (the "Developer Agreement"). *See* Deft. SJ Brief at 14-15; Dkt. 54 ("Deft. Cross Motion Reply") at 1-4. The Court disagreed. As the Court explained, "Defendant point[ed] to no judicial decision finding an express license under Twitter's User Agreement or under any similarly worded terms of service"—and for good reason, as "[b]y their express language, Twitter's terms grant a license to use content only to Twitter, and grant Twitter only the *right* to sublicense to others." *Id.* at *11 (internal quotation marks omitted); *see also id.* ("[C]ourts in this District have uniformly rejected the existence of such a license at both the motion-to-dismiss and summary-judgment postures."). Unlike, say, YouTube's terms of service, which both "authorized YouTube to sublicense to others" and then "explicitly and unambiguously *exercised that authority* by granting other YouTube users a sublicense which clearly extends to embedding," Twitter's "Terms of Service do not such thing." *Id.* (internal quotation marks omitted).

The Court then turned to Twitter's Developer Agreement, through which Defendant

2

claimed that "Twitter actually exercis[ed] its right to sublicense, including through embedded tweets." *Id.* at *12. The problem with that argument, the Court explained, was twofold. First, the license from Twitter "contemplated in the Developer Agreement and Policy [did] not expressly contemplate embedded tweets," such that "the Developer Agreement [was] hardly a clear sublicense for users like Defendant to embed Videos on its website." *Id.* "Second, and more fundamentally, even if the Developer Agreement and Policy were to expressly establish a sublicense between Twitter and Developers, Defendant present[ed] no evidence that it is party to the Developer Agreement." *Id.* (internal quotation marks omitted). While the Court acknowledged Defendant's position that it "received a sublicense from Twitter when it agreed to the Developer Agreement and Developer Policy *by using Twitter for Websites features like embedding*," *id.* (quoting Deft. Cross Motion Reply at 2), the Court rejected that position because "the ability to embed tweets is not the same as 'a policy or agreement that establishes any entity's legal rights or obligations,'" *id.* (quoting *McGucken v. Newsweek LLC*, No. 19 Civ. 9617 (KPF), 2020 WL 6135733, at *2-3 (S.D.N.Y. Oct. 19, 2020)). The Court further observed that if, as Defendant claimed, "'any individual may embed a publicly accessible tweet,' that would seemingly render a Developer-specific agreement superfluous." *Id.* (alteration adopted) (quoting Dkt. 48 (Defendant's Local Civil Rule 56.1 Statement) ¶ 104). Ultimately, the Court held, Defendant could not "leverage the Developer Agreement and Policy into an explicit and unambiguous sublicense." *Id.*

The Court thus found "that a reasonable factfinder could easily conclude that Twitter's Terms of Service and its Developer Agreement did not unambiguously grant Defendant a sublicense permitting it to embed Plaintiff's Twitter Post, so Defendant [was] not entitled to summary judgment on the theory that it had an express license to embed Plaintiff's post." *Id.*

3

(citation modified). On whether "a reasonable factfinder could conclude that Twitter's various terms and policies *did* grant Defendant such a sublicense, such that Plaintiff [was] not entitled to summary judgment on its claim of copyright infringement," the Court explained that Plaintiff was indeed "entitled to summary judgment as to Defendant's sublicense defense" for three reasons. *Id.* (citation modified). "The first two [were] aspects of Twitter's terms that [led] the Court to conclude that the terms unambiguously did *not* grant Defendant a sublicense." *Id.* And the third, the Court concluded, was that "even if Twitter's terms were ambiguous," summary judgment may still be granted "where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case"; in the absence of any extrinsic evidence offered by Defendant, Plaintiff remained "entitled to summary judgment on Defendant's sublicense defense." *Id.* at *13 (internal quotation marks omitted).

On October 14, 2025, Defendant moved for reconsideration of the Court's Opinion and Order under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e). Dkts. 59, 60 ("Motion").[1] Plaintiff filed its opposition on October 28, 2025. Dkt. 62 ("Opposition").

## II. Standard of Review

Local Civil Rule 6.3 instructs that, in seeking reconsideration of a court order denying a motion, the movant must "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." S.D.N.Y. Loc. Civ. R. 6.3. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995);

---

[1] "[B]ecause there has been no 'judgment' yet in this case, Rule 59(e) does not apply." *Sterling Select II Advisory, LLC v. Argus Info. & Advisory Servs., LLC*, No. 23 Civ. 2939 (JPC), 2025 WL 1936668, at *1 n.1 (S.D.N.Y. July 15, 2025) (quoting Fed. R. Civ. P. 59(e)).

*see Cohen v. Jamison*, No. 23 Civ. 1304 (LTS), 2023 WL 3412762, at *2 (S.D.N.Y. May 12, 2023) (explaining that reconsideration is warranted if a movant demonstrates "that the Court overlooked controlling law or factual matters that had been previously put before it" (internal quotation marks omitted)). "The reason for the rule confining reconsideration to matters that were overlooked is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

### III. Discussion

Defendant's motion raises two grounds for reconsideration, but neither persuades. First, Defendant asserts that this Court "fail[ed] to appreciate express language in Twitter's Terms of Service that automatically makes users parties to the Developer Agreement through conduct" like embedding tweets. Motion at 2-3. That assertion, however, fails to meet the reconsideration standard. For one, this Court already considered and rejected Defendant's argument that it "received a sublicense from Twitter when it agreed to the Developer Agreement and Developer Policy *by using Twitter for Websites features like embedding*." *Lynk Media*, 2025 WL 2771625, at *12 (quoting Deft. Cross Motion Reply at 2). It is axiomatic that a "motion for reconsideration is not an opportunity for litigants to take a second bite at the apple." *Doe v. Fashion Inst. of Tech.*, No. 25 Civ. 950 (JPC), 2025 WL 1920065, at *2 (S.D.N.Y. July 11, 2025). For another, even if Defendant were correct that this Court overlooked undisputed record evidence establishing that one becomes party to Twitter's Developer Agreement and its attendant rights and obligations

5

solely by embedding tweets,[2] that would still not "alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257, as the "Developer Agreement is hardly a clear sublicense for users like Defendant to embed Videos on its website," *Lynk Media*, 2025 WL 2771625, at *12.

That leads to Defendant's second reason to reconsider: that "defined terms" in the Developer Agreement—specifically, "Services," "Users," and "X Content"—make "clear" that it "does provide a sublicense for users like Defendant to embed Videos on its website." Motion at 4 (emphasis omitted). This reason fails, too. As an initial matter, Defendant could have cited those definitions in support of its cross-motion for summary judgment but failed to do so, *see, e.g.*, Deft. Cross Motion Reply at 2 (quoting the relevant language in the Developer Agreement without mentioning the definitions for "Services," "Users," and "X Content"), "making its reliance on these facts improper for purposes of the instant motion," *Sterling Select II Advisory*, 2025 WL 1936668, at *4 & n.2. *See also Steinberg v. Elkman*, No. 15 Civ. 278 (LTS), 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016) ("'[A] party may not advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration." (quoting *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001))); *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 20 (S.D.N.Y. 2005) ("[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.").

---

[2] Plaintiff responds by pointing to record evidence that, Plaintiff contends, shows that there "can be no dispute that Twitter requires a registered [Developer] account to become a qualified Twitter Developer who is granted certain qualified rights under the Developer Agreement." Opposition at 5-6 (citing Dkt. 40 ("Freeman Decl."), Exh. E ("Developer Agreement") at 25-26; Freeman Decl., Exhs. F, H, M). Because "Defendant alleges that it used developer features of the Services," Plaintiff continues, "it was subject to the Developer Policy's requirement to set up a Developer Account"— but "[t]here is no evidence that it has done so, and, therefore, cannot avail itself of any of the purported rights granted under the Developer Agreement." *Id.* at 6.

But even if considered on their merits, Defendant's definitions fail to move the needle. Defendant points to the Developer Agreement's definitions of "Services," "Users," and "X Content," terms which are used in that Agreement's license to Developers from Twitter.[3] Motion at 4. But none of those definitions "expressly contemplate[s] embedded tweets"[4]—just like the license "contemplated in the Developer Agreement and Policy does not expressly contemplate embedded tweets," as this Court already found. *Lynk Media*, 2025 WL 2771625, at *12; *cf. id.* (contrasting the license to Developers with the license to Twitter, the latter of which *does* expressly contemplate "embedded posts" (quoting Developer Agreement ¶ II.B)). Nor do they change the two "aspects of Twitter's terms that le[d] the Court to conclude that the terms unambiguously did *not* grant Defendant a sublicense": (1) the required representation that users "have all rights, licenses, etc. necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services" and that "such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission," and (2) Twitter's warning to Developers (and perhaps all users) that it "does not provide permission to use third party/user content." *Id.* (citation modified) (quoting Freeman Decl., Exh. B ¶ 3; *id.*, Exh. I at LM209).

---

[3] The license in the Developer Agreement "grants Developers a license to 'use the X/Twitter API to integrate X/Twitter Content into your Services as explicitly approved by X/Twitter' or to 'copy a reasonable amount of and display the X/Twitter Content on and through your Services to Users, as permitted by this Agreement.'" *Lynk Media*, 2025 WL 2771625, at *12 (citation modified) (quoting Developer Agreement ¶ II.A).

[4] The Developer Agreement defines "Services" as "your services, websites, applications, and other offerings (including research) that display X[/Twitter] Content or otherwise use the Licensed Material." Developer Agreement ¶ I.7. It defines "Users" as "visitors, users or customers of your Services." *Id.* ¶ I.14. And it defines "X[/Twitter] Content" as "Posts, the unique identification number generated for each Post, X[/Twitter] end user profile information, and any other data and information made available to you through the X[/Twitter] API or by any other means authorized by X[/Twitter], and any copies and derivative works thereof." *Id.* ¶ I.12.

7

Moreover, even if these definitions were to render Twitter's terms ambiguous, summary judgment still must be granted in favor of Plaintiff because "there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Id.* at *13 (internal quotation marks omitted). "Here, Defendant forewent introducing any extrinsic evidence in discovery," and "[a]s Defendant has produced no more than a scintilla of evidence on an issue as to which it bears the ultimate burden, Plaintiff is entitled to summary judgment on Defendant's sublicense defense." *Id.* (citing *United States v. Larracuente*, 952 F.2d 672, 673-74 (2d Cir. 1992) (existence of sublicense is an affirmative defense)). Now as before, "Defendant cannot leverage the Developer Agreement and Policy into an explicit and unambiguous sublicense." *Id.* at *12.

In sum, because Defendant's grounds for reconsideration would not "alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257, its motion necessarily fails.

## IV. Conclusion

For the above reasons, Defendant's motion for reconsideration is denied. The Clerk of Court is respectfully directed to close the motion at Docket Number 59.

Trial in this case is scheduled to begin on March 2, 2026. *See* October 22, 2025 Minute Entry. The joint proposed pretrial order and all other required pretrial filings (*i.e.*, joint proposed jury *voir dire* questions, verdict form, and requests to charge, and any motions *in limine* and pretrial memoranda of law) shall be filed in accordance with 7.B-C of the Court's Individual Rules and Practices in Civil Cases by January 12, 2026. Any oppositions to motions *in limine* and responsive pretrial memoranda of law shall be filed by January 19, 2026. Replies, if any, must be filed by January 26, 2026. The parties shall appear for a final pretrial conference on February 25, 2026, at 10:00 a.m. in Courtroom 12D of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

SO ORDERED.

Dated: November 17, 2025
New York, New York

JOHN P. CRONAN
United States District Judge